UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

SCOTT E.,

                      Plaintiff,

                v.

COMMISSIONER OF THE SOCIAL SECURITY
ADMINISTRATION,

                      Defendant.

-----------------------------------------------------------------

                          **MEMORANDUM & ORDER**
                          24-CV-1062 (MKB)

MARGO K. BRODIE, United States District Judge:

Plaintiff Scott E.[1] commenced the above-captioned action on February 9, 2024 pursuant

to 42 U.S.C. § 405(g), seeking review of a final decision of the Commissioner of the Social

Security Administration (the "Commissioner"), denying his claims for Social Security disability

insurance benefits under the Social Security Act ("SSA").[2]  (Compl., Docket Entry No. 1.)

---

[1]  Pursuant to Plaintiff's motion to seal the case, (Pl.'s Mot. to Seal, Docket Entry No. 13), Judge Nusrat J. Choudhury granted Plaintiff's motion in part and ordered the court to: "(1) redact the caption of any opinion, order, judgment, or other disposition of the court to reflect only Plaintiff's first name and last initial; (2) redact all references to Plaintiff's last name in any opinion, order, judgment, or other disposition of the court and refer to him by first name and last initial only; (3) change the caption of this case in PACER to reflect only Plaintiff's first name and last initial; (4) restrict all documents containing Plaintiff's social security number and/or birthdate to case participants only.  All other documents will be publicly accessible." (Order granting Pl.'s Mot. to Seal dated Aug. 26, 2024.)  On April 21, 2026, this case was transferred from Judge Choudhury to the Court.  (*See* Order Reassigning Case dated Apr. 21, 2026.)  In accordance with Judge Choudhury's order, the Court lists Plaintiff only by his first name and last initial.

[2]  The Court "liberally construe[s] pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (per curiam) (quoting *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007)); *see also McNamara v. Comm'r of Soc. Sec.*, No. 25-516, 2026 WL 1045356, at *1 (Apr. 16, 2026) ("[P]ro se filings should be liberally construed to

Plaintiff moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, arguing that Administrative Law Judge ("ALJ") Alan B. Berkowitz ("ALJ Berkowitz") erred in determining that Plaintiff was not entitled to his disability benefits because his "testimony and the medical evidence corroborating [his] testimony were [not] refuted" and he was "not afforded a reasonable and objective opportunity to present [his] case before an independent judge" as his rights were violated preceding the adjudication of his Social Security benefits claim.[3]  (Pl.'s Mot. 1–2.)  The Commissioner cross-moves for judgment on the

---

raise the strongest arguments they suggest." (quoting *Green v. Dep't of Educ.*, 16 F.4th 1070, 1074 (2d Cir. 2021))).  However, Plaintiff is a former practicing attorney and is not afforded the special latitude traditionally afforded to *pro se* plaintiffs.  *See Williams v. Smith*, No. 24-2733, 2026 WL 1045419, at *1 (2d Cir. Apr. 17, 2026) (summary order) ("Although we 'ordinarily . . . afford a special solicitude to *pro se* litigants,' 'a lawyer representing himself' . . . will generally 'receive[ ] no such solicitude at all.'" (first and third alterations in original) (quoting *Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010))); *Cox v. Dep't of Just.*, 111 F.4th 198, 207 (2d Cir. 2024) (declining to afford the plaintiff the "special solicitude typically owed to *pro se* litigants because he 'is not a typical pro se litigant: he is an attorney'" (first citing *Chevron Corp. v. Donzinger*, 990 F.3d 191, 203 (2d Cir. 2021); and then citing *Tracy*, 623 F.3d at 102)); *Corbett v. City of New York*, 816 F. App'x 551, 553 (2d Cir. 2020) ("[A]lthough '[i]t is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants' based on '[t]he rationale . . . that a *pro se* litigant generally lacks both legal training and experience, 'a lawyer representing himself ordinarily receives no such solicitude at all[.]'" (second, third, and fourth alterations in original) (citation omitted) (quoting *Tracy*, 623 F.3d at 101–02)); *see also Kelsey v. Duwe*, No. 21-CV-4298, 2021 WL 2209877, at *1 (S.D.N.Y. June 1, 2021) (finding former attorney plaintiff was "not entitled to the special solicitude normally afforded a *pro se* litigant" (internal quotation marks omitted)); *Moore v. T-Mobile USA, Inc.*, No. 10-CV-527, 2012 WL 13036858, at *5 (E.D.N.Y. Sep. 28, 2012) (holding *pro se* plaintiff, who was once an admitted attorney but was subsequently disbarred, was "not entitled to the degree of liberality given to non-attorney *pro se* [p]laintiffs" as a "former attorney").

[3]  Plaintiff filed two "motions" for judgment: (1) dated June 22, 2024 containing substantive arguments; and (2) dated July 24, 2024 arguing that an answer to his Complaint was never filed.  (Pl.'s Mot. for J. on the Pleadings ("Pl.'s Mot."), Docket Entry No. 15; Pl.'s Second Mot. for J. on the Pleadings ("Pl.'s Second Mot."), Docket Entry No. 14.)

However, as noted in Judge Choudhury's order dated May 29, 2024, the Commissioner obtained, served, and filed the administrative record on April 10, 2024 which "constitute[d] [the Commissioner's] answer."  (Order dated May 29, 2024.)  *See, e.g.*, *Britney R. v. Comm' of Soc. Sec.*, No. 23-CV-692, 2024 WL 4258190, at *4 (D. Conn. July 9, 2024) (holding "[t]he Commissioner answered the complaint by filing the administrative record."), *report and*

2

pleadings, arguing that substantial evidence supported ALJ Berkowitz's findings, which Plaintiff opposes.[4]

For the reasons set forth below, the Court denies Plaintiff's motion for judgment on the pleadings and grants the Commissioner's cross-motion for judgment on the pleadings.

## I.  Background

On March 30, 2018, Plaintiff filed an application for a period of disability and disability insurance benefits, with a disability onset date of March 16, 2018.  (Certified Admin. R. ("R.") 37, Docket Entry No. 20.)[5]  The Social Security Administration initially denied his claims on October 22, 2018.  (Id. at 37, 78–83.)  Plaintiff filed a request for a hearing on December 21, 2018, and ALJ Ifeoma N. Iwuamadi held a telephonic hearing on February 11, 2020.  (Id. at 37, 52–55, 84–89, 105–110.)  Plaintiff requested a postponement, on the record, so that he could obtain a representative, and a new hearing was scheduled for May 21, 2020 to be held by

_recommendation adopted_, Order Adopting Report and Recommendation (July 26, 2024). Further, the Commissioner subsequently filed a cross-motion for judgment on the pleadings. Therefore, Plaintiff's "second" motion, dated July 24, 2026, has no merit and the Court denies the motion.  (See Pl.'s Second Mot.)  Accordingly, all further references in this Memorandum and Order to Plaintiff's motion relates only to his "first" motion for judgment on the pleadings, dated June 22, 2024.  (See Pl.'s Mot.)

[4]  (Comm'r Cross-Mot. for J. on the Pleadings ("Comm'r Cross-Mot."), Docket Entry No. 12; Comm'r Mem. in Supp. of Comm'r Cross-Mot., appended to Comm'r Cross-Mot. ("Comm'r Mem."), Docket Entry No. 12-1; Pl.'s Mem. in Opp'n to Comm'r Cross-Mot. ("Pl.'s Opp'n), Docket Entry No. 18.)

[5]  The Commissioner initially filed a letter and declaration certifying service of the administrative record on Plaintiff on April 10, 2024.  (Ltr. of Service, Docket Entry No. 8; Decl. of Service, appended to Ltr. of Service, Docket Entry No. 8-1.)  On August 25, 2025, Judge Choudhury noted the Commissioner never filed the administrative record on the docket and ordered the Commissioner to do so.  (Order dated Aug. 25, 2025.)  The Commissioner filed the administrative record on August 26, 2025.  (See R.)

telephone because of the COVID-19 pandemic.[6]  (*Id*. at 37, 54–55, 126–27, 147.)  On the day of the May 21, 2020 hearing, Plaintiff informed the hearing office that he did not want a telephone hearing and requested an in-person hearing.  (*Id.* at 37, 156–59, 433–34.)  The hearing was postponed indefinitely due to the COVID-19 pandemic and Plaintiff's request for an in-person hearing was later rescheduled for March 16, 2022.  (*Id*. at 37, 160, 175, 196; *see also id.* at 435 (On August 6, 2020, the Social Security Administration (the "Administration") unsuccessfully called Plaintiff and left a voicemail to confirm whether he would accept a telephone hearing.).)  On March 7, 2022, Plaintiff informed the hearing office by letter that "he needed a postponement because he was waiting for medical records, he did not want to wear a face mask, he was not feeling well due to a previous COVID infection, . . . and he needed time to get an attorney."[7]  (*Id.* at 37–38, 199, 439–40.)   The hearing office attempted to reach Plaintiff on March 7, 2022 and March 14, 2022 to discuss his objections, but received no response and left voicemail messages which went unanswered.  (*Id.* at 38, 443.)  On the day of the March 16, 2022 hearing, Plaintiff failed the online COVID-19 health screening for admission to the federal building and

---

[6] Plaintiff alleges that "the clerk pressured [him] to adjourn the matter by repeatedly asking and explaining that [he] did not have an attorney."  (Pl.'s Opp'n 1.)  He states "[i]f the clerk didn't want [him] to have the hearing for some reason, [he] didn't mind letting her reschedule something that was more convenient for her."  (*Id.*)

[7] Initially, although Plaintiff resides in the service area of the Central Islip, New York hearing office, Plaintiff's request for a hearing was transferred to the Jamaica, New York hearing office due to "routine workload assistance."  (R. 37.)  Following the postponement of the scheduled May 21, 2020 hearing, Plaintiff's case was transferred back to the Central Islip, New York hearing office for an in-person hearing.  (*Id.*)  One of Plaintiff's objections to the scheduled March 16, 2022 hearing was that he "wanted the venue changed back to Jamaica."  (*Id.* at 37–38, 440; *see also* Pl.'s Mot. 1 ("I requested that the case be transferred back to Queens, but was denied.").)  ALJ Berkowitz found that Plaintiff "did not provide a reason for requesting a transfer to the Jamaica hearing office" and therefore did "not find that good cause exists for changing the place of the hearing to Jamaica."  (R. 38; *see also id.* at 441 (noting denial of venue transfer).)  The subsequent hearings were all scheduled for Central Islip, New York.

4

the hearing was rescheduled to May 18, 2022.  (*Id.* at 38, 202, 216.)  On the day of the May 18, 2022 hearing, Plaintiff again failed the online COVID-19 health screening for admission to the federal building, and the hearing was rescheduled.  (*Id.* at 38.)  "Given [Plaintiff's] objections to the COVID-19 safety procedures for in-person hearings and his difficulties with the COVID-19 health screenings, [Plaintiff] was scheduled for a telephone hearing" on June 23, 2022.  (*Id.* at 38, 219, 228, 231, 450–59.)

### a.  June 23, 2022 hearing before ALJ April Wexler

On June 23, 2022, ALJ April Wexler ("ALJ Wexler") held a telephone hearing with Plaintiff who chose to appear without an attorney or other representative.[8]  (*Id.* at 38, 58.)  ALJ Wexler attempted to place Plaintiff under oath, but Plaintiff responded, "I'm not testifying."  (*Id.* at 38, 61.)  ALJ Wexler asked Plaintiff whether he was "asking" her "to make a [d]ecision based on the record . . . and the documents" and Plaintiff responded in the affirmative.  (*Id.* at 61.)  Plaintiff later expressed his confusion about the documents ALJ Wexler would rely upon to make her decision, stating he never received those documents,[9] to which ALJ Wexler explained

---

[8] In his opposition brief, Plaintiff states that he has "no recollection" of his June 23, 2022 hearing or "why a third hearing then was scheduled."  (Pl.'s Opp'n 2.)

[9] Plaintiff alleges that that "he never received a copy of his exhibit file" after receiving a "broken CD."  (R. 38, 60–63, 457.)  Plaintiff also alleges that when he "went to [his] first social security hearing in Queens, the clerk, on that day, gave [him] a CD and said [he] should use the computer to review the evidence."  (Pl.'s Mot. 1.)  Plaintiff contends he "could not review the evidence, because [he] was not able to use the computer system because of [his] disability."  (*Id.*)

ALJ Berkowitz, in his decision, found that "the record show[ed] that the file was mailed to [Plaintiff] on CD on October 25, 2019 and November 1, 2019, and no additional records ha[d] been received since then."  (R. 38.)  Further, ALJ Berkowitz noted "[t]he hearing office had also called [Plaintiff] to review the exhibits on numerous occasions, but [Plaintiff] did not respond to attempted outreach."  (*Id.*; *see also id.* at 394 (letter to Plaintiff on October 25, 2019, enclosing CD record), 409 (letter to Plaintiff on November 1, 2019, enclosing CD record), 459 (the Administration contacted Plaintiff offering to send him a hard copy of his record but he stated he "didn't feel that was very practical" and would "think about it and call [ ] back"), 461–63 (the Administration mailed a hard copy version of the record on July 5, 2022), 480–81 (offering

5

there were "at least 25 attempts" to contact Plaintiff to both ensure he received the record and to ask for additional medical sources, which the Administration would be "happy to try to get records for [him]," but Plaintiff failed to cooperate.  (*Id.* at 61–63.)  ALJ Wexler then attempted to ask Plaintiff for the names of other doctors he had seen and treatment he had received, to potentially request additional records, but Plaintiff reiterated that he was "not testifying today." (*Id.* at 38, 62–63.)  Plaintiff then stated he had "seen lots of doctors" but that "he did not have any names or contact information for his medical providers."  (*Id.* at 38, 63–64.)  Plaintiff then requested an adjournment which ALJ Wexler "denied on the record" and "cautioned [Plaintiff] that if he did not offer testimony, she would make a decision based on the evidence in the file." (*Id.* at 38, 63–65.)  "However, because [Plaintiff] had not agreed in writing to a telephone hearing, the request for hearing was placed back on the docket," ALJ Wexler did not issue a decision, and a new ALJ was later assigned (ALJ Berkowitz).  (*Id.* at 38, 284, 286.)

An in-person hearing was scheduled for October 6, 2022.  (*Id.* at 38, 232, 248.)  The day before the hearing, Plaintiff failed the online COVID-19 health screening for admission to the federal building for a third time and the hearing was rescheduled to January 4, 2023.  (*Id.* at 38– 39, 270, 482–83; *see also id.* at 263 (letter from ALJ Wexler to Plaintiff explaining that he was required "to show good cause" if he still wanted a hearing because he failed to appear), 269 (letter from Plaintiff stating he "has to answer questions before the hearing" due to COVID rules and he attempted to call the number "but it was broken").)  In a letter dated December 8, 2022, Plaintiff requested another postponement, stating that he had a family matter to attend to.  (*Id.* at

---

Plaintiff the opportunity to listen to the prior hearing recording if he could not read a hard copy), 490 (letter to Plaintiff on December 15, 2022, enclosing CD record).)

39, 298, 302.)  ALJ Berkowitz denied the postponement request on December 15, 2022 and enclosed in the letter another copy of Plaintiff's exhibit file.  (*Id.* at 39, 302–03, 489.)

### b.  Plaintiff's allegations prior to the January 4, 2023 hearing

Plaintiff alleges that prior to the January 4, 2023 hearing before ALJ Berkowitz, his rights were violated which prevented him from being "afforded [ ] a reasonable and objective opportunity to present [his] case before an independent judge."  (Pl.'s Opp'n 3.)

First, Plaintiff alleges that he informed the hearing office that he "wanted to have a hearing in person without a mask" but was "refused and forced [ ] to wear a mask during the hearing."  (Pl.'s Mot. 1.)  Plaintiff also states that ALJ Berkowitz "was also wearing a mask." (*Id.* at 2.)  Plaintiff contends that being forced "to wear a mask against [his] will during the entire process obstruct[ed] his breathing" and "violated [his] rights for many reasons."  (*Id.*; *see also* Pl.'s Opp'n 2 ("At the hearing, Social Security forced me to wear a mask and the judge was wearing a mask.  I don't know what law allows Social Security to attack the claimants and force them to wear a mask impeding communication at a hearing.").)

Second, Plaintiff alleges that at the downstairs security checkpoint prior to the hearing, his "prescription glasses were confiscated during the [security] search . . . with no explanation," which "temporarily blind[ed him] in order to go through a metal detector."  (Pl.'s Mot. 2) Plaintiff states that the "guard yelled at [him] for not being able to see through the metal detector."  (*Id.*)

Lastly, Plaintiff alleges that the upstairs security guard "stuck the metal detector wand in between [his] legs" which "violated [his] rights and was done right before [he] was supposed to have a hearing."  (*Id.*)

7

Plaintiff states that he "filed a complaint with [the Administration] which was summarily denied," (*id.*), and attached the denial letter to his motion for judgment on the pleadings. (*See* Soc. Sec. Program Discrimination Complaint Form, appended to Pl.'s Mot. 6–10; Soc. Sec. Ltr. denying Pl.'s Discrimination Complaint, appended to Pl.'s Mot 11–13.) The denial letter explains that the Administration's Center for Compliance Management ("CCM") reviewed and denied Plaintiff's complaint because "CCM lacks jurisdiction over the content of the complaint" as his "allegation against the security guard is outside the scope of CCM's investigative authority" because the "security guards are not [Administration] employees." (Soc. Sec. Ltr. denying Pl.'s Discrimination Complaint.) CCM forwarded Plaintiff's complaint to the Center for Materiel Services who oversees contracting services for the security guards. (*Id.*) Plaintiff did not include any response or follow up from the Center for Materiel Services. (*See generally* Pl.'s Mot.)

### c.   The January 4, 2023 hearing before ALJ Berkowitz

Plaintiff appeared for an in-person hearing before ALJ Berkowitz on January 4, 2023. (R. 39, 69–70.) "Although [Plaintiff] was previously informed of his right to representation, and granted a hearing postponement on February 11, 2020 in order to obtain representation, [Plaintiff] chose to appear without an attorney or other representative."[10] (*Id.* at 39.) ALJ Berkowitz attempted to place Plaintiff under oath and Plaintiff responded "I'm not testifying. I submitted the medical records for review." (*Id.* at 39, 69–70.) Therefore, ALJ Berkowitz ended the hearing finding it "completed." (*Id.* at 70.)

---

[10]  Plaintiff states that he "had contacted a number of attorneys who never responded," but he cannot "make these attorneys answer [his] calls," so he was "not sure why Social Security is putting that burden on [him]." (Pl.'s Opp'n 1.)

### d.  Additional medical evidence

Plaintiff initially provided the information of Dr. Loren Ecker, of New Horizon Counseling Center, in relation to his mental health conditions (which included depression, anxiety, and manic-depression), and Dr. Lana Kang, in relation to his hand and wrist conditions (including carpal tunnel syndrome, repetitive stress injury, and a steroid shot he received in his right wrist).  (*Id.* at 74, 364–65, 373–74, 509–48.)

The record reflects progress notes from Dr. Kang, a hand and wrist specialist at the Hospital for Special Surgery, from September 5, 2017, prior to the alleged onset date of Plaintiff's disability, detailing his first clinic visit where he complained about constant numbness and pain in his hands with the left hand worse than the right hand.  (*Id.* at 43, 509–11.)  Dr. Kang conducted a physical examination, noted she believed Plaintiff's hand numbness was "likely" carpal tunnel syndrome, recommended Plaintiff "get a nerve testing," discussed nonoperative treatment, and administered a cortisone shot injection.  (*Id.* at 43, 510.)  Plaintiff underwent a nerve study on February 20, 2018, which found "mild right ulnar neuropathy at the elbow (cubital tunnel syndrome) that ha[d] resulted in mild neuropraxia."  (*Id.* at 43, 513.)

The record also reflects a psychological intake conducted by Dr. Ecker on March 20, 2018.  (*Id.* at 517–32.)  Plaintiff was referred to New Horizon Counseling Center for outpatient treatment services for depression and anxiety.  (*Id.* at 518.)  Further, the intake form notes Plaintiff reported various other issues including hyperlipidemia, digestive problems, urological problems, migraines, and carpal tunnel.  (*Id.* at 522.)  Dr. Ecker noted that Plaintiff reported "feeling depressed and anxious all of his life and ha[d] seen multiple therapists at different stages," "has struggled to maintain healthy work relationships and has been fired from many jobs," that his "[m]ultiple medical conditions discourage him from pursuing his career," and he

9

"suffered bullying and other traumatic experiences which have contributed to his current state of depression." (*Id.* at 525.) Dr. Ecker also noted that Plaintiff "was initially quite guarded during the intake, but eventually became more open and cooperative." (*Id.*) Plaintiff was referred for outpatient therapy and medication management. (*Id.* at 43, 526.) Further, Plaintiff was seen for a medication evaluation at which time he was diagnosed with bipolar disorder. (*Id.* at 43.) On May 3, 2018, Plaintiff followed up with a clinical social worker who set up an initial treatment plan, although Plaintiff deferred further treatment because he was leaving the state. (*Id.* at 43, 526, 532, 545–48.)

The Administration notes that Plaintiff failed to attend the following Administration-scheduled appointments: two neurological clinical evaluations on August 28, 2018 and September 26, 2018 and three psychological clinical evaluations scheduled for August 1, 2018, August 14, 2018, and October 1, 2018. (*Id.* at 74.)

In December of 2022, Plaintiff provided the Administration with a list of treating doctors, but without addresses or telephone numbers. (*Id.* at 39, 487.) The form also listed various conditions and the name of a hospital where he was hospitalized because of his "back" and received "medicine" as a treatment. (*Id.* at 487.) ALJ Berkowitz explained that he was "unable to request records from these providers because [Plaintiff's] file [did] not contain a current, signed authorization for release of records." (*Id.* at 39; *see also id.* at 490 (the Administration's letter to Plaintiff on December 15, 2022 requesting a signed authorization to release information form).)

e. **ALJ Berkowitz's decision**

By decision dated January 17, 2024, ALJ Berkowitz first found that he was "satisfied that [Plaintiff] ha[d] been afforded ample opportunities to be present for a hearing and offer

10

testimony," Plaintiff had previously been cautioned by ALJ Wexler "that if he did not offer testimony, she would make a decision based on the evidence in the file," and that Plaintiff, as an attorney, "should be able to understand that if he does not offer testimony or assist with developing the record, the consequence is that he will receive a decision that is based on the evidence in the file." (*Id.* at 39.)

Second, ALJ Berkowitz determined that Plaintiff "last met the insured status requirements of the [SSA] on December 31, 2021" but "was not under a disability . . . at any time from March 16, 2018, the alleged onset date, through December 31, 2021, the date last insured." (*Id.* at 41, 44.) In arriving at his conclusion, ALJ Berkowitz conducted the five-step procedure for evaluating disability claims.[11] (*Id.* at 40–44.)

At step one, ALJ Berkowitz found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of his disability. (*Id.* at 41.)

At step two, ALJ Berkowitz found that Plaintiff suffered from several medically determinable impairments, including right cubital syndrome, obesity, and bipolar disorder. (*Id.*) However, ALJ Berkowitz held that Plaintiff "did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12

---

[11] The five-step sequential process outlined by the SSA considers: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience. *Schillo v. Kijakazi*, 31 F.4th 64, 70 (2d Cir. 2022) (citing 20 C.F.R. § 404.1520(a)(4)(i)–(v)); *see* 20 C.F.R. § 416.920(a); *see also Nunez v. Comm'r of Soc. Sec.*, 164 F.4th 60, 67 (2d Cir. 2025) (explaining the SSA's five-step inquiry for disability determinations).

11

consecutive months," and "therefore, [Plaintiff] did not have a severe impairment or combination of impairments." [12] (*Id.* at 42.)  ALJ Berkowitz further found that although Plaintiff "also alleged disability due to carpal tunnel syndrome," that condition was "not established in the record as a medically determinable impairment." (*Id.*)

ALJ Berkowitz explained that generally "it is a claimant's responsibility to prove that he or she is . . . disabled" and "must inform [the Administration] about or submit all known evidence that relates to whether or not he or she is . . . disabled." (*Id.*)  That "duty is ongoing and requires a claimant to disclose any additional related evidence about which [he or she] become[s] aware" and "applies at each level of the administrative review process." (*Id.*)  ALJ Berkowitz noted that the Administration "will consider only impairment(s) the claimant says he or she has or about which [the Administration] receive[s] evidence," "evidence in the case record must be complete and detailed enough to allow [the Administration] to make a determination or decision about whether the claimant is disabled," and the evidence "must allow [the Administration] to determine the nature and severity of the impairment(s)." (*Id.*)

"In considering the claimant's symptoms, the [ALJ] must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the claimant's pain or other symptoms," and second the ALJ "must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the ability to perform work-related activities." (*Id.*)  In his analysis, ALJ Berkowitz noted that Plaintiff

---

[12]  For claims for a period of disability and disability insurance benefits, a claimant must show that she has met the requirements of sections 416(i) and 423 of the SSA, which establish the necessary conditions of an individual's insured status.  42 U.S.C. §§ 416, 423.  Plaintiff does not contest this requirement.

"reported that he has been unable to work since March 16, 2016 because of hand injuries, carpal tunnel syndrome, cubital tunnel syndrome, depression, and 'manic depression'" which causes "pain in his hands" and makes it difficult to lift and type. (*Id.*) Further, ALJ Berkowitz noted Plaintiff "reported that he experienced depression and anxiety, and he had difficulty paying attention and remembering things." (*Id.*) Lastly, ALJ Berkowitz noted that Plaintiff "reported that he lived alone," "he could prepare food, clean and do laundry," "he could drive, travel alone, pay bills, and handle his finances," and "he went shopping daily and that he socialized." (*Id.*)

ALJ Berkowitz found there was "minimal medical evidence in the record" as the case record lacked medical opinions on Plaintiff's functioning and "[s]tate agency medical consultants reviewed the evidence and concluded that it was insufficient to opine on [Plaintiff's] functional capacity." (*Id.* at 43.) Starting with Plaintiff's physical conditions, ALJ Berkowitz detailed a September of 2017 physical evaluation and February of 2018 nerve testing results but otherwise noted there were "no subsequent treatment records" and Plaintiff "would not attend a neurological consultative examination at the agency's expense." (*Id.*) In addressing Plaintiff's mental health conditions, ALJ Berkowitz detailed a March of 2018 psychiatric care initial intake visit and a May of 2018 clinical social worker visit but otherwise explained that Plaintiff "deferred further treatment because he was leaving the state," there were "no subsequent treatment records, and [Plaintiff] would not attend a psychological consultative examination at the agency's expense." (*Id.*)

Therefore, ALJ Berkowitz concluded that, upon a review of the "available evidence," "while there were underlying medically determinable impairments that could reasonably be expected to produce [Plaintiff's] symptoms, there [was] insufficient evidence to determine the extent to which they limit [Plaintiff's] ability to perform basic work activities." (*Id.*) Further, as

13

to Plaintiff's medically determinable mental impairment, ALJ Berkowitz determined it was "non-severe" because it "caused no limitations in any of the functional areas *and* the evidence does not otherwise indicate that there [was] more than a minimal limitation in [Plaintiff's] ability to do basic work activities."[13]  (*Id.* at 44.)  ALJ Berkowitz concluded that Plaintiff's physical and mental impairments did not significantly limit Plaintiff's ability to perform basic work activities, and consequently, Plaintiff did not have a severe impairment or combination of impairments. (*Id.*)  Therefore, ALJ Berkowitz found Plaintiff was not under a disability within the meaning of the SSA at any time "from March 16, 2018, the alleged onset date, through December 31, 2021, the date last insured."  (*Id.*)

On December 21, 2023, the Administration Appeals Council denied Plaintiff's request for review of ALJ Berkowitz's determination, rendering his decision final.  (*Id.* at 1–5.)  Plaintiff timely appealed the decision.  (*See* Compl.)

## II.  Discussion

### a.  Standard of review

"In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision."  *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) (citing *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002)), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005); *see Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (quoting *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012)).  "'Substantial evidence' is 'a very deferential standard of

---

[13]  The four "functional areas," set out in the disability regulations for evaluating mental disorders and in section 12.00C of the listing impairments (20 C.F.R., Part 404, Subpart P, Appendix 1), are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting and maintaining pace; and (4) adapting or managing oneself. (R. 44.)  20 C.F.R § 404.1520a.  *See infra* footnote 17 for further discussion.

review,'" *Nunez v. Comm'r of Soc. Sec.*, 164 F.4th 60, 70 (2d Cir. 2025) (quoting *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022)), "even more so than the clearly erroneous standard," *Benjamin v. Comm'r of Soc. Sec.*, No. 25-2343, 2026 WL 697004, at *1 (2d Cir. Mar. 12, 2026) (summary order) (quoting *Schillo*, 31 F.4th 74).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)); *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (per curiam) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (same); *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (quoting *Richardson*, 402 U.S. at 401) (same); *see also Benjamin*, 2026 WL 697004, at *1 (same); *Schillo*, 31 F.4th 64 (same).  Once an ALJ finds facts, the court "can reject those facts only if a reasonable factfinder would have to conclude otherwise."  *Nunez*, 164 F.4th at 70 (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012)); *see Anthony v. Saul*, No. 24-2163, 2025 WL 2848224, at *1 (2d Cir. Oct. 8, 2025) (summary order) (quoting same); *Rushford v. Kijakazi*, No. 23-317, 2023 WL 8946622, at *1 (2d Cir. Dec. 28, 2023) (summary order) (quoting same); *Talyosef v. Saul*, 848 F. App'x 47, 48 (2d Cir. 2021) (quoting same).  "Indeed, under the substantial evidence standard, the [Administration]'s determination must be upheld if it is rational and supported by the record, even '[i]f [the] evidence is susceptible to more than one rational interpretation.'"  *Nunez*, 164 F.4th at 70 (alterations in original) (quoting *Schillo*, 31 F.4th at 74); *see Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (The court "defer[s] to the Commissioner's resolution of conflicting evidence." (quoting *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012))); *see also Spottswood v. Kijakazi*, No. 23-54, 2024 WL 89635 (2d Cir. Jan. 9, 2024) (summary order) (quoting same).  If, however, the Commissioner's decision is not supported by substantial

15

evidence or is based on legal error, a court may set aside the Commissioner's decision.  *See, e.g.*, *Nunez*, 164 F.4th at 64 (remanding to the Commissioner because the ALJ's residual functional capacity determination was not supported by substantial evidence); *Rubin v. O'Malley*, 116 F.4th 145, 160 (2d Cir. 2024) (remanding because substantial evidence did not support the ALJ's determination regarding disability status); *Colgan v. Kijakazi*, 22 F.4th 353, 363–64 (2d Cir. 2022) (remanding because substantial evidence did not support the Commissioner's decision); *see also Prince v. Astrue*, 514 F. App'x 18, 19–20 (2d Cir. 2013) ("A court may set aside the Commissioner's decision only if it is based upon legal error or if his factual findings are not supported by substantial evidence in the record as a whole." (first citing 42 U.S.C. § 405(g); and then citing *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008))).  The SSA "must be liberally applied, for it is a remedial statute intended to include not exclude."  *Moran*, 569 F.3d at 112; *see also Dany Z. v. Saul*, 531 F. Supp. 3d 871, 881 (D. Vt. 2021) ("In its deliberations, a court should bear in mind that the [SSA] is 'a remedial statute to be broadly construed and liberally applied.'" (quoting *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981))).

### b.   Non-reviewable issues

Plaintiff first argues that he was "attacked by Social Security without provocation before the hearing" and complains about how he was treated at two security checkpoints.  (Pl.'s Opp'n 2.)  Second, Plaintiff criticizes how he was "forced [ ] to wear a mask" during his hearing in front of ALJ Berkowitz.  (*Id.* at 2–3.)  Plaintiff therefore contends he was not "afforded [ ] a reasonable and objective opportunity to present [his] case before an independent judge" because "[b]eing attacked before the hearing and forced to be masked does not appear to be reasonable or objective in any way."  (*Id*. at 3.)

The Commissioner argues that the "Court should dismiss these broad and conclusory allegations." (Comm'r Mem. 8 n.4.)  First, the Commissioner argues that none of Plaintiff's claims are judicially reviewable under 42 U.S.C. § 405(g), Plaintiff has not explained how any of his claims arise under the SSA, or that the allegations have met the exhaustion requirements of 42 U.S.C. § 405(g).  (*Id.*)  The Commissioner points to Plaintiff's complaint which "only seeks review of [ALJ Berkowitz]'s decision . . . and does not specifically indicate any civil rights or other causes of action."  (*Id.*)  Second, the Commissioner argues that Plaintiff "has not alleged a single fact that would bring this . . . case under the purview of any applicable anti-discrimination statute."  (*Id.*)  Lastly, the Commissioner argues that Plaintiff's "conclusory statement that [the Administration] violated his right is not sufficient to support any cause of action."  (*Id.*)

Plaintiff has failed to demonstrate, based either on case law or statutory support, that his pre-hearing allegations are reviewable by a district court upon appeal from an ALJ's denial decision.  *See* 42 U.S.C. § 405(g) (a final decision by the Commissioner after a hearing is judicially reviewable to determine "only the question of conformity with such regulations and the validity of such regulations"); *Butts*, 388 F.3d at 384 ("In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision."); *Wheeler v. Apfel*, 201 F.3d 434, 434 (2d Cir. 1999) ("A district court reviewing the denial of benefits must determine whether the Administrative Law Judge applied the correct legal standard and whether the findings of fact were supported by substantial evidence."); *see also Colgan*, 22 F.4th at 359 ("In reviewing an appeal from the denial of disability benefits, we focus on the administrative ruling rather than the district court's opinion to determine whether the ALJ's decision was supported by substantial evidence . . . [which] requires us to conduct a plenary review of the administrative record."

(internal quotation marks omitted)).  Therefore, while sympathetic to what allegedly occurred before ALJ Berkowitz's hearing, the claims are not reviewable by the Court and do not impact the Court's analysis of ALJ Berkowitz's determination denying Plaintiff social security disability benefits.

###### c.    The record supports ALJ Berkowitz's step two determination

Plaintiff argues that the Commissioner "did not provide any evidence refuting the medical evidence that [he] provided," "did not contact the doctors to ask them about the condition," "did not hire their own hand doctor to review [Plaintiff's] medical evidence" or "write a report about it."  (Pl.'s Opp'n 2.)  Plaintiff generally contends that the Commissioner "didn't seem to do anything to review the evidence provided, except make requests for more evidence."  (*Id.*)  First, Plaintiff explains that he "provided the forms for Social Security to request information from [his] providers," which he acknowledges they received information from those doctors, but argues that he "can't control what the doctors provide or if and when they provide information at all" and can only control "that [he] provided the documents that [he] had."  (*Id.* at 2–3.)  Plaintiff argues "[t]h[o]se documents are sufficient to corroborate [his] claim."  (*Id.* at 3.)  Second, Plaintiff argues he "went to the Hospital for Special Surgery for diagnosis," a world-renowned institution, and the "diagnostic test of [his] hands and arms showed a positive diagnosis consistent with [his] claim."  (*Id.* at 2.)  Plaintiff explains he "received surgery which was ultimately not successful in order to treat [his] condition."  (*Id.*)  In addition, Plaintiff contends the Commissioner "has provided no evidence to contradict the Hospital for Special Surgery" and "did not request an evaluation by a doctor who [Plaintiff] chose which they could watch."  (*Id.* at 2–3.)  Plaintiff argues the Commissioner "provided no contrary reports from another expert or even interviewed the doctors for further explanation if

18

they doubted their diagnosis." (*Id.* at 3.)  Lastly, Plaintiff argues his "condition has worsened

since" his insurance was cancelled and explains a new symptom he now suffers.[14]  (*Id.* at 2.)

The Commissioner argues ALJ Berkowitz's decision applied the correct legal standards,

is supported by substantial evidence, and therefore should be affirmed by the Court.  (Comm'r

Mem. 1.)  First, the Commissioner argues the Administration and ALJ Berkowitz made

reasonable efforts to develop the record and properly issued a decision based on the available

evidence.  (*Id.* at 14.)  While Plaintiff's application reported treatment from Dr. Kang and Dr.

---

[14]  Plaintiff argues that "some of the cases provided by Social Security have a notation on the top that they do not have precedential effect" and "one of the cases provided is not a claim for Social Security Disability (SSD) benefits." (Pl.'s Opp'n 3.)  Therefore, Plaintiff argues "[t]hese cases should be stricken from [the Commissioner's] motion for judgment as inapplicable." (*Id.*)  Plaintiff's argument relies on the incorrect principle that unreported cases cannot be relied upon because they do not have precedential effect.  "Judges have wide latitude in deciding what to publish." *Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 436 (S.D.N.Y. 2014).  "The Second Circuit has made clear that published district court opinions are not more persuasive than unpublished opinions." *Paige v. Digit. Bus. Networks All., Inc.*, No. 24-CV-3169, 2026 WL 880549, at *19 (S.D.N.Y. Mar. 31, 2026) (citing *Lebron v. Sanders*, 557 F.3d 76, 79 n.7 (2d Cir. 2009) ("We do not suggest that published district court opinions are more persuasive than unpublished district court opinions[.]" (alteration in original))).  Regardless of whether a case is reported or unreported, district court decisions are not precedential.  *See Tronox Inc. v. Andarko Petrol. Corp.*, No. 14-CV-5495, 2025 WL 2242166, at *3 (S.D.N.Y. Aug. 6, 2025) ("Unlike appellate court decisions, district court decisions are not precedential in the strict sense of the word: they are not binding on other courts or judges — even on judges in the same district — in subsequent cases.").  Therefore, district courts are not mandated to follow non-precedential case law, but may still rely on non-binding case law to determine an issue.  *See Apuzza v. NYU Langone Long Island*, No. 22-CV-7519, 2024 WL 3520544, at *5 n.2 (E.D.N.Y. July 23, 2024) (finding "there is nothing improper about the [court's previous] citations to holdings and reasoning of numerous district court cases" because "'the decisions of other district courts, including decisions from the same district, . . . are not binding on other districts,' they may still be 'relevant and persuasive'" (quoting *Sinkler v. Berryhill*, 317 F. Supp. 3d 687, 690 (W.D.N.Y. 2018))); *King v. Creed*, No. 14-CV-165, 2017 WL 11712218, at *3 (N.D.N.Y. Sep. 28, 2017) ("[The p]laintiff is correct that decisions from other district courts are not binding on this [c]ourt . . . [b]ut it does not follow that a court is precluded from considering or relying on decisions from other district courts within their circuit merely because those decisions are not binding.").  As to the case that allegedly does not involve social security benefits, which Plaintiff does not name, the Court will analyze the cases each party relies upon and determine whether the Court finds each to be persuasive.

Ecker, whose records were obtained and added to the administrative record, the Commissioner contends that "Plaintiff did not provide [the Administration] with the information necessary to obtain evidence from his treatment providers" despite the Administration's, ALJ Wexler's, and ALJ Berkowitz's numerous attempts to assist Plaintiff.  (*Id.* at 14–15.)  Due to Plaintiff's lack of cooperation, there were no records between March of 2018 and December of 2021 for ALJ Berkowitz to review.  (*Id.* at 14.)  The Commissioner argues that while "ALJs have a duty to affirmatively develop the record . . . the duty to develop the record is not infinite," and ALJ Berkowitz "properly closed the record in January [of] 2023 — nearly five years after Plaintiff filed his benefits application — and issued a decision based on the available record."[15]  (*Id.* at 15–17.)  Second, the Commissioner contends that there is substantial evidence that supports ALJ Berkowitz's finding that Plaintiff did not suffer from a severe impairment prior to Plaintiff's last insured date of December 31, 2021.  (*Id.* at 17–21.)  In support, the Commissioner argues that "Plaintiff has not met his burden of establishing evidence of a severe impairment" because "Plaintiff's statements about pain or other symptoms will not alone establish disability" and the information contained in the record was insufficient to corroborate Plaintiff's hand pain, psychiatric treatment, and limitations due to all alleged conditions.  (*Id.* at 18–21.)

In the second step of the five-step analysis, the ALJ must determine whether a claimant has a severe impairment or a combination of impairments.  An impairment is considered "severe" if it significantly limits an individual's physical or mental abilities to do basic work activities and persists for at least twelve months.  SSR 96-3p, 1996 WL 374181, at *1 (July 2,

---

[15]  Because Plaintiff does not argue that the Administration and/or ALJ Berkowitz failed in their duty to affirmatively develop the record, but instead argues that the information he provided is "sufficient to corroborate [his] claim," the Court does not address ALJ Berkowitz's duty to develop the record.  (Pl.'s Opp'n 3.)

1996); 20 C.F.R. § 404.1520(c); *see also Colby v. O'Malley*, 743 F. Supp. 3d 433, 435 (E.D.N.Y. 2024) (quoting 20 C.F.R. § 404.1520(c)); *Cardoza v. Comm'r of Soc. Sec.*, 353 F. Supp. 3d 267, 279–80 (S.D.N.Y. 2019) (quoting same).  Basic work functions are related to an individual's ability and aptitude to perform most jobs such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling . . . seeing, hearing, and speaking . . . [u]nderstanding, carrying out and remembering simple instructions . . . [u]se of judgment . . . [r]esponding appropriately to supervision, co-workers and usual work situations."  *Cardoza*, 353 F. Supp. 3d at 279–80 (alterations in original) (quoting *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012)); 20 C.F.R. § 404.1522(b); *see also Melissa S. v. O'Malley*, No. 23-CV-859, 2024 WL 4057457, at *3 (D. Conn. Sep. 5, 2024) (quoting 20 C.F.R. § 404.1522(b)).  A severe impairment must persist for at least twelve months.  *See* 42 U.S.C. § 423(d)(1)(A) (disability involves impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months").  An impairment is considered "not severe" if it only has a minimal effect on an individual's ability to perform basic work functions.  SSR 96-3p, 1996 WL 374181, at *1; *see Bowen v. Yuckert*, 482 U.S. 137, 154 n.12 (1987).  The "mere presence" of a disease or impairment or a diagnosis on its own is not sufficient to make the condition severe.  *Taylor*, 32 F. Supp. 3d at 265; *see also Denise W. v. Comm'r of Soc. Sec.*, No. 25-CV-349, 2026 WL 970009, at *5 (N.D.N.Y. Apr. 9, 2026) (quoting *id.*); *Tavera v. Comm'r of Soc. Sec.*, No. 21-CV-5020, 2025 WL 2523183, at *11 (quoting *Bourdier v. Saul*, No. 19-CV-205, 2020 WL 705211, at *6 (E.D.N.Y. Feb. 12, 2020)).  However, "the standard for finding of severity under Step Two of the sequential analysis is de minimis and is intended only to screen out the very weakest cases."  *McIntyre*, 758 F.3d at 151.  The burden is on the plaintiff to establish that any impairment they allege is severe.  *Dixon v. Shalala*, 54 F.3d

1019, 1030–31 (2d Cir. 1995); *see also Wayne P. M. v. Comm'r of Soc. Sec.*, No. 24-CV-1268, 2026 WL 849934, at *4 (N.D.N.Y. Mar. 27, 2026) (citing *DeChirico v. Callahan*, 134 F. 3d 1177, 1180 (2d Cir. 1998)) (same).

### i.   Plaintiff has the burden to establish a severe impairment

Plaintiff does not contend that there was insufficient evidence in ALJ Berkowitz's decision to support the denial of Plaintiff's claim, but instead argues that what he submitted to the Administration supports his claim for social security disability benefits and the Administration failed to contradict his claims and/or present supporting evidence to refute Plaintiff's claims.  (*See* Pl.'s Opp'n 2.)  Plaintiff is incorrect — case law in the Second Circuit makes clear that the burden is on the claimant to demonstrate that he has an impairment and such impairment is severe.  *See, e.g.*, *Wayne P. M.*, 2026 WL 849934, at *4 ("The plaintiff bears the burden of presenting evidence establishing that an impairment is both medically determinable and severe."); *Elizabeth A. o/b/o A.C.P. v. Saul*, No. 20-CV-128, 2021 WL 2431002, at *2 (W.D.N.Y. June 15, 2021) ("It is the claimant's burden at Step Two to establish that he has a medically determinable impairment and that the impairment is severe.").  As it is an ALJ's explicit duty to develop the record, the Administration and the various ALJs made numerous requests for more information about Plaintiff's conditions, treatments, and doctors were to assist Plaintiff in developing a record ahead of ALJ Berkowitz's review of his claim for social security disability.  *See Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508–09 (2d Cir. 2010) ("[I]t is the rule in our circuit that the [social security] ALJ, unlike a judge in a trial, must [on behalf of all claimants] . . .  affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding."); *cf. Miller v. Comm'r of Soc. Sec.*, 784 F. App'x 837, 839 (2d Cir. 2019) (finding no further duty to develop the record where the claimant failed to specify which

22

records were missing or what the missing records would show).  Contrary to Plaintiff's contentions, the Commissioner need not "provide any evidence refuting the medical evidence that [Plaintiff] provided," "contact the doctors to ask them about the condition," "hire their own hand doctor to review [Plaintiff's] medical evidence" or "write a report about it" — instead, the onus is on Plaintiff to establish that his impairment is severe.  (Pl.'s Opp'n 2.)  *See Elizabeth S. v. Comm'r of Soc. Sec.*, No. 19-CV-6440, 2021 WL 1054371, at *4 (W.D.N.Y. Mar. 19, 2021) ("[A]lthough the ALJ has a duty to develop the record, ultimately it is the plaintiff's burden to prove she is disabled."); *Oliveras ex rel. Gonzalez v. Astrue*, No. 07-CV-2841, 2008 WL 2262618, at *7 n.13 (S.D.N.Y. May 30, 2008) ("The ALJ has an affirmative duty to develop the record, but the burden is ultimately on the plaintiff to prove she has a disability."), *report and recommendation adopted*, 2008 WL 2540816 (S.D.N.Y. June 25, 2008); *Goldstein v. Apfel*, No. 97-CV-2933, 1998 WL 99562, at *8 (S.D.N.Y. Mar. 5, 1998) ("Although the ALJ is responsible for developing the record, it is plaintiff's burden to show that he cannot engage in substantial gainful activity because of his impairments.").  Plaintiff appears to understand this as he does not contend that the Administration and/or ALJ Berkowitz failed in their duty to affirmatively develop the record but instead argues that the information he provided "are sufficient to corroborate [his] claim."  (Pl.'s Opp'n 3.)  The Court is sympathetic to Plaintiff's contention that while he "provided the forms for [the Administration] to request information from [his] providers," he "can't control what the doctors provide or if and when they provide information at all."  (*Id.* at 2–3.)  However, as Plaintiff acknowledges, he can only control the documents and information he provided, and, unfortunately, he only provided the information of Dr. Kang and

Dr. Ecker.[16]  (*Id.*)  Moreover, Plaintiff, as stated on the record, refused to testify or otherwise provide information at the hearings in front of both ALJ Wexler, (R. 38, 61–63), and ALJ Berkowitz, (*id.* at 39, 69–70).  Therefore, ALJ Berkowitz's decision was based on the extremely limited information that Plaintiff provided to the Administration, which did not include records between March of 2018 and December of 2021, despite both the Administration's and the various ALJ's numerous attempts to help Plaintiff to strengthen his claim.  (R. 61–63 (ALJ Wexler "count[ed] at least 25 attempts to try to contact" Plaintiff to discuss the documents he submitted and request "additional medical sources"); 63–64 (ALJ Wexler asked Plaintiff to provide "the names and addresses so that [the Administration] can seek [his medical record] evidence for [him]" to which he stated he "[did not] have that right here" and "would have to compile something like that"); 64 (ALJ Wexler stated the Administration had "asked [Plaintiff] on numerous occasions to give [the Administration] [Plaintiff's] medical sources," explaining that she "can't make the case for [him]" and her "hands are tied" when the Administration reaches out to assist Plaintiff in presenting his case but he "choose not to" cooperate); 487 (Plaintiff's provided list of additional doctors for the Administration to contact in December of 2022, which is hard to read and does not provide addresses, telephone numbers and dates seen); *see also id.* at 394–98, 409–11, 490, 497–98 (letters to Plaintiff from the Administration requesting medical records and a list of his doctors).)

The information provided by Plaintiff's doctors establishes several physical and psychological conditions that Plaintiff suffered from — ALJ Berkowitz determined that Plaintiff suffered from the following medically determinable impairments: right cubital tunnel syndrome,

---

[16]  Plaintiff does not argue that ALJ Berkowitz failed to obtain the information from the additional doctors he named, without addresses or telephone numbers, in his illegible form provided to the Administration in December of 2022.  (R. 39, 487.)

obesity, and bipolar disorder.  (R. 41.)  Plaintiff correctly argues the information and "documents are sufficient to corroborate [his] claim[s]" that he has a medically determinable impairment. (Pl.'s Opp'n 3.)  Unfortunately, corroboration of his diagnosed conditions and pain is insufficient to establish that Plaintiff is entitled to disability benefits — he must establish that he suffers from a "severe" impairment.  *See Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002) ("It is insufficient for individuals attempting to prove disability status . . . to merely submit evidence of a medical diagnosis of an impairment."), *overturned on other grounds by ADA Amendments Act of 2008*, Pub. L. 110-325, 122 Stat. 3553 (Jan. 1, 2009); *Ibela v. Allied Universal*, No. 21-1995, 2022 WL 1418886, at *2 (2d Cir. May 5, 2022) (summary order) ("A diagnosis alone is insufficient to establish disability under the [Social Security Act]."); *Acevado v. Saul*, 577 F. Supp. 3d 237, 247 (S.D.N.Y. 2021) ("[T]he mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment, is not, by itself, sufficient to render a condition 'severe.'" (quoting *Taylor*, 32 F. Supp. 3d at 265)); *Allen o/b/o Allen v. Comm'r of Soc. Sec.*, No. 16-CV-1207, 2017 WL 6001830, at *3 (N.D.N.Y. Dec. 4, 2017) ("A diagnosis may be sufficient to establish a medically determinable impairment; however, a mere diagnosis does not render a condition severe."); *Coleman v. Shalal*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995) ("The presence of an impairment is thus not in and of itself disabling within the meaning of the [Social Security] Act.").

### ii.  Plaintiff's physical conditions

Plaintiff first failed to provide further information, explanation, or testimony as to why his physical conditions, right cubital tunnel syndrome and obesity, were "severe impairments" or how his physical conditions significantly limit his ability to perform basic work activities.  ALJ Berkowitz's decision reviewed the available record, which included Plaintiff's stated complaints,

Dr. Kang's physical evaluation and notes, and the February of 2018 nerve test study.  (R. 42–43.)

ALJ Berkowitz also took into account Plaintiff's reports that he lived alone, "could prepare food,

clean and do laundry," "could drive, travel alone, pay bills, and handle his finances," "went

shopping daily and that he socialized," but that his condition made it difficult for him to lift and

type.  (*Id.* at 42.)  While the medical records noted Plaintiff's obesity and signs of "mild right

ulnar neuropathy at the elbow (cubital tunnel syndrome)," there were "no subsequent treatment

records and [Plaintiff] would not attend a neurological consultative examination at the agency's

expense."  (*Id.* at 43.)  Further, given "[t]here are no medical opinions of [Plaintiff's] functioning

in the case record," ALJ Berkowitz determined "there [was] insufficient evidence to determine

the extent to which [Plaintiff's impairments] limit [Plaintiff's] ability to perform basic work

activities."  (*Id.*)  Therefore, ALJ Berkowitz determined that Plaintiff's physical conditions were

not "severe" impairments.  (*Id.* at 42–44.)

The Court agrees with ALJ Berkowitz that Plaintiff failed to meet his burden of

establishing he suffered from severe physical impairments given the limited record.  *See Britt v.

Astrue*, 486 F. App'x 161, 163 (2d Cir. 2012) (finding no error in ALJ's step two finding of non-

severe impairments, where the plaintiff failed to "furnish the ALJ with any medical evidence

showing how [his] alleged impairments limited his ability to work"); *Pierro v. Comm'r of Soc.

Sec.*, No. 18-CV-5478, 2019 WL 3338127, at *5–6 (S.D.N.Y. July 24, 2019) (finding that while

the plaintiff's listed conditions were present in the plaintiff's medical records, "the medical

evidence d[id] not show any residual limitation as a result"); *Baker v. Comm'r of Soc. Sec.*, No.

17-CV-1267, 2019 WL 1986517, at *4 (W.D.N.Y. May 6, 2019) (finding the plaintiff failed to

meet her burden of establishing that her conditions, which caused pain, numbness, tingling,

weakness, and fatigue, were "severe impairments because she ha[d] not explained how any of

26

these conditions significantly limit her ability to perform basic work activities"); *see also Acosta v. Colvin*, No. 15-CV-4051, 2016 WL 6952338, at *15 (S.D.N.Y. Nov. 28, 2016) ("An impairment is not severe if the 'medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.'" (quoting SSR 85-28, 1985 WL 56856, at *2 (Jan. 1, 1985))). The Court finds ALJ Berkowitz's determination that Plaintiff's physical conditions were not severe impairments was supported by the lack of substantial evidence in the record.

### iii. Plaintiff's psychological conditions

Plaintiff failed to provide further information, explanation, or testimony as to why his psychological condition and his bipolar disorder, were a "severe impairment" or how his psychological condition significantly limited any of the broad functional areas specific to evaluating mental impairments.[17] ALJ Berkowitz reviewed the evidence available in the record including Plaintiff's intake for psychiatric outpatient care, Dr. Ecker's notes from his month of medication evaluation, Dr. Ecker's diagnosis of bipolar disorder, and Plaintiff's visit in May of 2018 with a clinical social worker. (R. 43.) ALJ Berkowitz noted there were "no subsequent treatment records and [Plaintiff] would not attend a psychological consultative examination at

---

[17] As mentioned *supra* Section I.e., 20 C.F.R § 404.1520a implements a special technique for evaluating mental impairments. *Id.* At step two, the ALJ must determine a claimant's functional limitation caused by a mental impairment based on a rating of four functional areas: (1) "understand, remember, or apply information"; (2) "interact with others"; (3) "concentrate, persist, or maintain pace"; and (4) "adapt or manage oneself." *Id.* § 404.1520a(b), (c)(3). The ALJ will rate the claimant's degree of limitation in these areas using a five-point scale: none, mild, moderate, marked, and extreme. *Id.* § 404.1520a(c)(4). If the ALJ rates the degree of limitation as none or mild, the impairment is considered not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." *Id.* § 404.1520a(d); *see Nunez*, 164 F.4th at 67–68 (explaining the technique for a reviewing authority to determine whether a claimant as a "medically determinable [ ] mental impairment" at step two); *Tanya R. v. Comm'r of Soc. Sec.*, No. 24-CV-9076, 2026 WL 791256, at *17 (S.D.N.Y. Mar. 22, 2026) (same).

the agency's expense." (*Id.*)  ALJ Berkowitz also took into account Plaintiff's reports that he lived alone, "could prepare food, clean and do laundry," "could drive, travel alone, pay bills, and handle his finances," and "went shopping daily and that he socialized."  (*Id.* at 42.)  ALJ Berkowitz then analyzed the four functional areas and found the following: (1) Plaintiff had no limitation in the first area of "understanding, remembering or applying information"; (2) Plaintiff had no limitation in the second area of "interacting with others"; (3) Plaintiff had no limitation in the third functional area of "concentrating, persisting or maintaining pace"; and (4) Plaintiff had no limitation in the fourth functional area of "adapting or managing oneself."  (*Id.* at 44.)  Therefore, ALJ Berkowitz determined that "[b]ecause [Plaintiff's] medically determinable mental impairment caused no limitations in any of the functional areas *and* the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, it was non-severe."  (*Id.*)

The Court agrees with ALJ Berkowitz that Plaintiff failed to meet his burden of establishing that he suffered from severe psychological impairments given the limited record. *See Dean F. v. Comm'r of Soc. Sec.*, No. 20-CV-1597, 2022 WL 4279189, at *4 (W.D.N.Y. Sep. 15, 2022) (affirming ALJ's decision that the plaintiff's medically determinable mental impairment was non-severe as it was caused by "no more than a 'mild' limitation in any of the functional areas"); *Jane M.A. v. Comm'r of Soc. Sec.*, No. 19-CV-808, 2021 WL 63066, at *4 (W.D.N.Y. Jan. 7, 2021) (affirming ALJ decision where the medical record supported finding the plaintiff's impairment functionally limited her only mildly in three of the four broad functional areas and therefore was non-severe).  The Court finds that ALJ Berkowitz's determination that Plaintiff's psychological conditions were not severe was supported by the lack of substantial evidence in the record.

### iv.  Plaintiff's carpal tunnel syndrome

In addressing Plaintiff's carpal tunnel syndrome, ALJ Berkowitz determined the condition was "not established in the record as a medically determinable impairment."  (R. 42.) Plaintiff contends that the Commissioner "provided no evidence to contradict the Hospital for Special Surgery," "did not request an evaluation by a doctor who [Plaintiff] chose which they could watch," and "provided no contrary reports from another expert or even interviewed the doctors for further explanation if they doubted their diagnosis."  (Pl.'s Opp'n 2–3.)  Plaintiff is incorrect as he holds the burden to establish his condition constitutes a severe impairment.  *See* discussion *supra* Section II.c.i.  Examining the record, the documents and information provided by both Plaintiff and Dr. Kang establish that Plaintiff was "diagnosed" with carpal tunnel syndrome prior to the alleged onset date of Plaintiff's disability; Plaintiff visited Dr. Kang on September 5, 2017 and had a nerve test conducted on February 20, 2018, while his social security disability claim alleges an onset date of March 16, 2018.  (*See* R. 43.)  Plaintiff failed to provide any information or documentation to establish that he suffered from this condition during the period of disability as the record lacks any medical records between March of 2018 and December of 2021.  Similarly, Plaintiff's contention that his "condition has worsened since" his insurance was cancelled, (Pl.'s Opp'n 2), does not address the period of time between the alleged onset date and the date his insurance ended.[18]

Moreover, Plaintiff has failed to establish that he was even diagnosed with the condition. Other than the "likely" diagnosis of carpal tunnel syndrome by Dr. Kang, which alone is

---

[18]  As explained *infra*, even if Plaintiff argues that his condition worsened during the alleged period of disability, such allegation is insufficient by itself to establish a severe impairment.

insufficient, (*see* discussion *infra*), Plaintiff submitted a nerve study which found that Plaintiff suffered from cubital tunnel syndrome, an entirely different diagnosis.[19]  (R. at 43, 513.)  The record does not contain any other objective medical evidence establishing Plaintiff's carpal tunnel syndrome.  Therefore, ALJ Berkowitz's determination that Plaintiff did not establish carpal tunnel syndrome as a medically determinable impairment is supported by the lack of record.  *See Flanigan v. Colvin*, 21 F. Supp. 3d 285, 301–02 (S.D.N.Y. 2014) (finding the ALJ's conclusion "that medically determinable impairment could not be established from [the plaintiff's] alleged onset date through his date last insured" was supported by the absence from the "medical record [of] objective findings or evidence of treatment").

Even if Plaintiff had established his carpal tunnel syndrome as a medically determinable impairment during the period of alleged disability, the lack of any other supporting documentation or testimony in the record fails to establish that the impairment would be considered severe because it impacted Plaintiff's ability to perform basic work functions.  *See Karam v. Colvin*, No. 14-CV-6076, 2015 WL 3868542, at *7 (W.D.N.Y. June 23, 2015) (affirming ALJ decision finding "plaintiff ha[d] failed to establish a diagnosis of carpal tunnel syndrome or demonstrate what effect the specific symptoms of his condition ha[d] on his ability to perform basic work activities"); *Pearson v. Astrue*, No. 10-CV-521, 2012 WL 527675, at *11 (N.D.N.Y. Feb. 17, 2012) ("Even though plaintiff was diagnosed with carpal tunnel syndrome, plaintiff failed to demonstrate that his carpal tunnel syndrome significantly limited his ability to

---

[19]  ALJ Berkowitz determined that Plaintiff's cubital tunnel syndrome was a medically determinable impairment.  (R. 41.)  Cubital tunnel syndrome is different from carpal tunnel syndrome — both are types of peripheral neuropathy.  *See Sheila C. v. O'Malley*, No. 24-CV-2, 2025 WL 25501, at *8 (D. Conn. Jan. 3, 2025).  *See* discussion *supra* Section II.c.ii as to the Court's review of ALJ Berkowitz's determination that Plaintiff's cubital tunnel syndrome was a non-severe impairment.

do basic work activities.").  Plaintiff's submitted nerve study, which found largely normal findings with the exception of "mild right ulnar neuropathy at the elbow (cubital tunnel syndrome) that has resulted in mild neuropraxia," fails to demonstrate how Plaintiff was limited by the condition.  (R. at 43, 513.)  There is no objective medical evidence in the record opining on the issue of Plaintiff's abilities while suffering from this impairment.  Therefore, Plaintiff has failed to establish how this condition resulted "in significant work-related limitations."  *Bailey v. Berryhill*, No. 18-CV-13, 2019 WL 427320, at *3 (D. Conn. Feb. 4, 2019) (finding the plaintiff "failed to establish that these conditions result[ed] in significant-work related limitations such that the ALJ erred in not finding them severe" where nerve studies revealed largely normal findings with one exception and the objective medical evidence did not establish the condition as severe); *see Cheryl S. v. Saul*, No. 20-CV-378, 2021 WL 1893474, at *3 (W.D.N.Y. May 11, 2021) (affirming ALJ decision where "the record contain[ed] no persuasive proof that plaintiff's carpal tunnel syndrome caused any limitations to her ability to perform work-related functions" or any "indication that such limitations existed for a time period sufficient to satisfy the 12-month durational requirement").

Plaintiff's argument that his visit to Dr. Kang, her resulting diagnosis of "likely" carpal tunnel syndrome, and the administered steroid injection "surgery" supports finding an impairment is unpersuasive and not supported by case law.  (Pl.'s Opp'n 2.)  First, "[t]he mere presence of an impairment, or that a person has been diagnosed and/or treated for an impairment is not, by itself sufficient to render a condition severe."  *Ronald S. v. Comm'r of Soc. Sec.*, No. 20-CV-1688, 2022 WL 3716568, at *11 (W.D.N.Y. Aug. 29, 2022) (citing *Prince*, 514 F. App'x at 20) (affirming ALJ's finding where the record reflected "little to no symptoms" of the alleged impairment or limitations impacting the plaintiff's ability to perform basic functions); *see*

*Lambert v. Comm'r of Soc. Sec.*, No. 20-CV-2467, 2021 WL 11715453, at \*7–9 (E.D.N.Y. Sep. 30, 2021) (finding the plaintiff's diagnosed impairments as non-severe because the record did not establish treatment or that the pain significantly limited plaintiff's ability to do basic work activities); *see also Acevado*, 577 F. Supp. 3d at 247 ("[T]he mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment, is not, by itself, sufficient to render a condition 'severe.'" (quoting *Taylor*, 32 F. Supp. 3d at 265)); *Allen o/b/o Allen*, 2017 WL 6001830, at \*3 ("A diagnosis may be sufficient to establish a medially determinable impairment, however, a mere diagnosis does not render a condition severe."); *Gallegos v. Colvin*, No. 13-CV-393, 2014 WL 4635418, at \*18 (D. Conn. Sep. 11, 2014) ("The mere diagnosis of an impairment says nothing about the severity of the condition.").  Second, even the fact that "a claimant had surgery has no bearing on the severity of an impairment; it is the functional impact of the impairment that is of import." *Ronald S.*, 2022 WL 3716568, at \*12; *see Karen H. v. Kijakazi*, No. 20-CV-335, 2021 WL 3513829, at \*2 (W.D.N.Y. Aug. 10, 2021) (affirming ALJ's finding that the plaintiff's carpal tunnel syndrome was not severe because it did not cause significant functional limitations despite the fact that the plaintiff had surgery during the relevant period).  Lastly, Plaintiff's contention that his "condition has worsened since" his insurance was cancelled, explaining a new symptom he now suffers, (Pl.'s Opp'n 2), is insufficient for two reasons: (1) he only presents this argument to the Court in his opposition briefing to the Commissioner's cross-motion and did not present it to ALJ Berkowitz as Plaintiff refused to testify; and (2) because a plaintiff's subjective complaints are not enough to establish a severe impairment.  *See* 20 C.F.R. § 404.1521 ("[A] physical or mental impairment must be established by medical evidence from an acceptable medical source.  We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the

existence of an impairment(s).").  In fact, the record is replete with Plaintiff's subjective complaints and personal comments on his carpal tunnel syndrome, but this is alone insufficient to establish a severe impairment.  *See Jose R. v. Kijakazi*, No. 20-CV-918, 2021 WL 5826375, at *3 (N.D.N.Y. Dec. 8, 2021) (finding the ALJ's determination that the plaintiff did not suffer from a medically determinable impairment supported where the plaintiff's statements at the hearing were alone insufficient to establish he had a severe impairment sufficiently and the plaintiff otherwise did not submit medical evidence or information to document his impairment or his treatment for the condition); *Bowden v. Comm'r of Soc. Sec.*, No. 18-CV-82, 2019 WL 3027803, at *4 (W.D.N.Y. July 11, 2019) (affirming ALJ decision where the plaintiff did not meet her burden of presenting evidence that the impairment was severe as the record did not offer evidence supporting plaintiff's subjective complaints).  Similar to his other conditions, the record reflects an absence of any medical information, evidence, or testimony to establish that Plaintiff's carpal tunnel syndrome was a medically determinable condition and/or that it could have been found to be "severe."  *See Hastrich v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 388, 399 (W.D.N.Y. 2019) (affirming ALJ's decision finding "[d]espite [the p]laintiff's complaints, there [was] no objective evidence in the record [to] support that [the p]laintiff's bilateral carpal tunnel syndrome qualifie[d] as a severe impairment"); *House v. Comm'r of Soc. Sec.*, No. 15-CV-1064, 2016 WL 4275732, at *9 (N.D.N.Y. Aug. 12, 2016) (affirming ALJ's decision finding the plaintiff failed to demonstrate a medically determinable impairment of carpal tunnel syndrome where she was not diagnosed with carpal tunnel syndrome and the nerve tests were equivocal or negative for carpal tunnel syndrome).

Therefore, ALJ Berkowitz's determination that Plaintiff was not disabled because he did not have any severe impairments is supported by the lack of substantial medical evidence in the

33

record.  *See Flanigan*, 21 F. Supp. 3d at 301 ("A finding that a condition is not severe means that the plaintiff is not disabled, and the Administrative Law Judge's inquiry stops at the second level of the five-step sequential evaluation process." (quoting *Rosario v. Apfel*, No. 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999))).  The Court finds that Plaintiff's objection to ALJ Berkowitz's disability decision is without merit.

## III. Conclusion

For the foregoing reasons, the Court denies Plaintiff's motion for judgment on the pleadings and grants the Commissioner's cross-motion for judgment on the pleadings.  The Clerk of Court is directed to close this case.

Dated:  June 9, 2026
        Brooklyn, New York

                                    SO ORDERED:


                                    _____/s/MKB_____
                                    MARGO K. BRODIE
                                    United States District Judge